## H. MAY *vs.* Schooner SOVEREIGN.

### IN ADMIRALTY.   BEFORE ALLEN, C.J.

### JANUARY, 1871.

When carrier receives goods, burden is on him to show safe delivery, or prove that loss occurred by excepted causes; then the libellant may show negligence of the carrier.

*Lamotte vs. Angel,* 1 Hawn. 140, considered.

Damage to cargo held to be caused by perils of the sea, and libel dismissed.

### DECISION OF ALLEN, C.J.

This is a libel filed against the schooner Sovereign, by the owner of cargo brought in the same, from San Francisco to this port, for damage done to the goods in the course of the voyage.

The libel charges that Horace Davis & Co. shipped on board the schooner Sovereign, at San Francisco, in good order, and consigned to the libellant at Honolulu, a certain quantity of flour, bread, and crackers in tins, which the master of said schooner has failed to deliver in part, and in good order, to the value of $459.

The libellant alleges that owing to the Sovereign being in an unsound and unseaworthy condition, and owing to careless, negligent and improper stowage, and the large and excessive quantity of freight, and by reason of want of proper care on the part of the master, etc., large quantities of sea water came on board the deck of said vessel, which deck was false and open, by which the merchandise was damaged to the extent of $459.02.

The respondent admits the shipping of the goods, but denies that any damage was sustained which was not caused by danger of the seas; and he avers that any damage incurred was caused by one of the perils excepted by the bill of lading; that the Sovereign, on the 28th November, sailed from San Fran-

cisco, laden with assorted cargo; was then staunch, tight and strong; that the merchandise was well and sufficiently stowed and secured, hatches well secured, caulked, covered, &c.; that the deck was not false, and open or leaky, but sound; that the schooner was well and sufficiently manned, victualed, furnished, &c.; that she encountered rough weather, and gales and heavy seas, which caused her to labor heavily, and that the damage was by winds, weather, and accidents of voyage.

The goods having been received at San Francisco as per bill of lading to be delivered here in good order, and the respondent having failed to fulfil the contract, it is incumbent on him, in order to excuse himself, to show that the damage was occasioned by the dangers of the sea, as that is the only exception in the bill of lading.

The issue is, then, formally made. The principles of law which are recognized as applicable to a case of this kind are very well laid down in the notes in Smith's Leading Cases, p. 338. The carrier is always liable for injuries resulting from his own negligence, including, of course, defects in the means of transportation provided by him. He is therefore liable for those injuries which the violence of motion causes in consequence of his negligence or defective means. By proving the delivery of the thing to be carried by him, the burden of accounting for is thrown upon him, and he may either show the safe delivery of goods, or prove that the loss occurred by one of the excepted causes.

All the authorities agree that after the damage to cargo has been established, it is incumbent on the respondent to show that it was occasioned by the perils excepted in the bill of lading, and in doing this he must show that the ship was seaworthy and well found, and properly manned, and managed in a seamanlike manner, and that the cargo was properly stowed and dunnaged. In the case of *Clark vs. Barnwell,* 12 Howard, 132, the Court say that although the loss occurs by the peril of the sea, yet if it might have been avoided by skill and diligence at the time, the carrier is liable. But in this stage of the case

burden is on the plaintiff to establish the negligence, as the affirmative lies upon him. The doctrine of *Lamotte vs. Angel,* in 1 Hawn., 140, is somewhat at variance with this case, for there the Court say, that to impose upon the merchant the obligation to prove negligence on the part of the carrier would be a great hardship, for he does not usually accompany the ship; he is not acquainted with the incidents of the voyage; whereas, it is an easy matter for the master, when he has used care and diligence in transporting the property, to show that care and the absence of negligence on his part." Practically, there may not be much difference in presenting a case to the Court, but it is clear to my mind that it should be incumbent on the respondent to prove that the loss was occasioned by the perils of the seas, after having done his full duty in furnishing a seaworthy vessel, and sailing her in a seamanlike manner, with her cargo well stowed and dunnaged. After he has thus made a *prima facie* case, the libellant may, of course, introduce rebutting evidence that the loss might have been avoided by skill and diligence at the time.

For the defence the first officer is introduced, who testifies that he has been a mariner for twenty-three or twenty-four years, and has been attached to the Sovereign since November 21st, last; has always served in schooners, except two or three years; has been a master, mate, and foremast hand. "I had often seen this vessel before I went on board in San Francisco, and have known her for eighteen months. She had been newly painted in her upper works, and copper painted on the bottom; her tonnage was ninety-nine tons." He says, further, that she was in a seaworthy condition, in his judgment; that she was well found for a voyage of this kind, in sails and rigging, cables and anchors, manned, and not leaking, and was apparently a strong vessel. "She didn't work or complain," to use his language; the decks were apparently in good order, and so were the pumps. He testifies, further, that they had rough weather before reaching the Farallones, encountering strong winds and a heavy sea; reefed the sails; the vessel labored very heavily;

shipped some water, and lost some lumber overboard; the pumps were promptly attended to; after the heavy weather, the vessel made 180 strokes an hour. On the third day out the vessel labored heavily, and she was hove to; she made no water till the second day out; that the weather was stormy the first fifteen days out, and that she labored heavily; no sails were split or carried away; there was a rip in the mainsail. He says that the vessel was full below, and her deck load was flush with the rail, being some twenty-eight inches high. "We had on, and between decks, some thirty M. lumber; on the coast she would carry forty M. or fifty M. on deck."

The second officer corroborates the testimony of the first officer, and says that they had rough weather and heavy sea on the second and third day out; had to lay under close sail, having a heavy sea all the time; the vessel labored heavily.

One of the foremast hands corroborated the testimony of the officers of the schooner as to her being seaworthy, and also as to the rough weather. He says that the schooner lay-to under trysail and jib at one time, and that a gale made a hole in the jib, and parted the flying-jib stay. At times, part of mainsail was close hauled. He says, further, that the water came on board over the bows, amidships, and quarter, and that the vessel labored heavily most of the way down. He says that the schooner laid to a part of one day; that the foresail was double-reefed; that reefs were taken in the mainsail; that the trysail was set; that the mainsail was old; that the trysail and foresail were good.

The first question to be settled is as to the seaworthiness of the vessel. It appears that the vessel, in the opinion of these witnesses, who have sailed her on this voyage, is staunch and strong, and in all respects seaworthy; that she encountered a gale of wind and heavy sea. They are all experienced seamen. The officers were well acquainted with the sailing of schooners, and the Court is obliged to regard their testimony, unimpeached as it is, as conclusive in the absence of all opposing evidence.

The next question which arises is as to the sufficiency of the

stowage. On the arrival of the schooner, the U. S. Consul, at the request of the master, appointed Captain McGregor, an experienced shipmaster, to make a survey of the hatches, which he did, and he testified that they were well secured in all respects, and that the cargo was well stowed with proper dunnage, and that it had not shifted, but it was owing to being wet with salt water that the injury arose; the leak was from the deck as the water apeared to have run from one bag to another. This testimony is in corroboration of the testimony of the second officer, who superintended the stowage of the vessel.

But it is contended by the counsel for the libellant, that it was unsafe to have had a deck load of lumber, especially when carrying an assorted cargo. It is in evidence that the cargo did not shift, although a few boards were blown off by the gale. The vessel was deep in the water, and Captain Babcock says that it is not a heavy deck load if the vessel was strong. The mate says he thinks there was some thirty M. on board, above and below, but that on the coast this vessel would carry forty M. or fifty M. on deck. It is very evident, therefore, that this was not an unreasonable deck load for a seaworthy vessel.

It is contended, further, that as the leak was made on the second day out, and near the Farallones, it was the duty of the master to have returned to San Francisco; but the second officer says that it would have been unsafe to have returned, as there was a gale of wind and a heavy sea from the south-east and south-west. The decision of a question of this sort must be left to the discretion of the master; and unless it appears that he was reckless, it is not proper to hold him responsible for any advantage which shippers may suppose they would have derived on taking a different course. It is very evident that the flour was injured before they possibly could have made sail for San Francisco, and more especially before she could have reached that port.

The respondent has shown that the vessel encountered a gale of wind and boisterous weather, and that she labored heavily; that the sea broke on her amidships and on the quarter, and

that she shipped much water, so that it was necessary to keep the pumps in almost constant operation to keep the vessel free. It is very evident that the leak was occasioned by the straining of the vessel in the gale and heavy weather encountered after leaving the port of San Francisco.

After carefully examining the testimony and the principles of law applicable to it, I am of opinion that the damage arose from the dangers of the seas, within the exceptions of the bill of lading, and therefore the libel must be dismissed with costs.

Let judgment be entered accordingly.

*A. F. Judd & F. H. Harris,* proctors for libellant.

*R. H. Stanley,* proctor for respondents.

January 9th, 1871.